Hyung S. Choi, State Bar 015669
Veronika Fabian, State Bar 018770
CHOI & FABIAN, PLC
90 S. Kyrene Rd., Suite #5
Chandler, Arizona  85226
tel:  (480) 517-1400
fax: (480) 517-6955
Flagstaff: (928) 779-2226
hyung@choianfabian.com
veronika@choiandfabian.com
   Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Mikhail Miller, <br><br> Plaintiff, <br> vs. <br><br> Midway Chevrolet Company I, LLC d/b/a Midway Chevrolet; <br><br> Defendant. | NO. <br><br> **COMPLAINT** |

**INTRODUCTION**

1. Defendant car dealer accessed Plaintiff's credit information without any legal justification.  Defendant also supplied various car loan companies with personal information about Plaintiff, causing the loan companies to access Plaintiff's credit information.  To make the matters worse, Defendant refused to even respond to Plaintiff's request to send the illegally obtained credit reports to him and delete electronically kept information about him.  Plaintiff brings this case to remedy

Defendant's impermissible access of Plaintiff's credit information in violations of the Fair Credit Reporting Act ("FCRA").

## JURISDICTION

2. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331 which confers jurisdiction over Fair Credit Reporting Act ("FCRA") claims without regard to the amount in controversy.  The sole claim asserted in this case is for violations of the Fair Credit Reporting Act.  This Court has subject matter jurisdiction pursuant to 15 U.S.C. §1681*p*.

## VENUE

3. Venue is proper in this District Court pursuant to 28 U.S.C. §1337 because Defendant's principal place of business is located at 2323 West Bell Road, Phoenix, Arizona 85023.

## PARTIES

4. Plaintiff Mikhail Miller (hereinafter referred to as "Plaintiff") is an individual residing in Glendale, Maricopa County, Arizona.

5. Plaintiff is a consumer as that term is defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a(c).

6. Defendant Midway Chevrolet Company I, LLC d/b/a Midway Chevrolet ("Midway" or "Defendant") is a for-profit entity organized pursuant to the

laws of Arizona with its principal place of business at 2323 West Bell Road, Phoenix, Arizona 85023.

**FACTS**

7. A few days before September 15, 2015, Plaintiff received a solicitation from Capital One Auto Finance which stated "You're pre-approved for up to $35,000 in auto financing."

8. The solicitation directed Plaintiff to take the letter to Midway.

9. On September 15, 2015, Plaintiff went to Midway with the letter.

10. Plaintiff was introduced to salesperson Benjamin Navarrette.

11. Plaintiff gave the Capital One solicitation letter to Navarrette, and told Navarrette that he was interested in buying a car with Capital One's pre-approved credit.

12. Navarrette asked Plaintiff for personal information such as birth date, social security number, etc.

13. Plaintiff told Navarrette that he did not want to provide his personal information as he did not want Midway to pull his credit.

14. Plaintiff reiterated he wanted to use Capital One's pre-approved credit, and he did not see any reason for Midway to pull his credit.

15. Plaintiff was familiar with how a dealership uses information on a perspective customer during negotiations, and he did not want Midway to have access to his credit history.

16. In fact, Plaintiff attempted to buy a vehicle a few months prior and felt the dealer was using information on his credit history against him.

17. Plaintiff decided not to buy a car at that time, and Plaintiff did not want that to happen again.

18. Plaintiff pointedly told Navarrette that he was not going to sign any documents such as a credit application which will authorize Midway to pull his credit history.

19. Navarrette agreed Midway will not pull Plaintiff's credit history.

20. Plaintiff did not ask for any credit from Midway.

21. Notwithstanding the fact that Navarrette agreed Midway would not pull Plaintiff's credit history, and the fact that Plaintiff did not ask for any credit from Midway, Midway accessed Plaintiff's credit file from Experian, Equifax, and TransUnion on September 15th, 2015. (Exhibit A).

22. Experian is a "consumer reporting agency" as that term is defined in 15 U.S.C. §1681a(f).

23. Equifax is a "consumer reporting agency" as that term is defined in 15 U.S.C. §1681a(f).

24. TransUnion is a "consumer reporting agency" as that term is defined in 15 U.S.C. §1681a(f).

25. Experian acts as a data repository, assembling and storing information on consumers for the purpose of furnishing consumer reports to third parties.

26. Equifax acts as a data repository, assembling and storing information on consumers for the purpose of furnishing consumer reports to third parties.

27. TransUnion acts as a data repository, assembling and storing information on consumers for the purpose of furnishing consumer reports to third parties.

28. Midway is a subscriber and user of consumer reports issued by Experian.

29. Midway is a subscriber and user of consumer reports issued by Equifax.

30. Midway is a subscriber and user of consumer reports issued by TransUnion.

31. On September 15, 2015, Midway accessed the contents of Plaintiff's credit file from Experian, Equifax and TransUnion, doing what is colloquially known as "hard pulls."

32. In connection therewith, Midway made a general or specific certification to Experian, Equifax and TransUnion that Midway sought the information because it had a legitimate business need for the information in connection with a business transaction initiated by Plaintiff or to review an account to determine whether Plaintiff continued to meet the terms of said account.

33. Midway's certification to Experian was false as it did not have any legitimate business need or on-going account with Plaintiff.

34. Rather, Midway accessed Plaintiff's credit information to gain an unfair advantage in negotiating with Plaintiff.

35. To make the matters worse, Midway then sent Plaintiff's personal information to Santander Consumer USA.

5

36. As a result, Santander Consumer USA pulled Plaintiff's credit history through Experian on September 15, 2015. (Exhibit A).

37. Midway also sent Plaintiff's personal information to California Republic Bank.

38. As a result, California Republic Bank pulled Plaintiff's credit history through Experian on September 15, 2015. (Exhibit A).

39. Midway also sent Plaintiff's personal information to COAF.

40. As a result, COAF pulled Plaintiff's credit history through TransUnion on September 15, 2015. (Exhibit A).

41. Midway also sent Plaintiff's personal information to Ally Financial.

42. As a result, Ally Financial pulled Plaintiff's credit history through TransUnion on September 15, 2015. (Exhibit A).

43. Midway also sent Plaintiff's personal information to Compass Bank.

44. As a result, Compass Bank pulled Plaintiff's credit history through TransUnion on September 15, 2015. (Exhibit A).

45. To make the matters even worse, Plaintiff's attempt to communicate with Midway about the illegal pull of his credit has met with complete silence.

46. Plaintiff told Navarrette about the illegal pull and asked him to gather credit reports and give them to Plaintiff, and delete all electronically kept credit reports.

47. Navarrette did not respond.

48. On October 15, 2015, Plaintiff faxed a letter to the finance director at Midway, asking him or her to gather credit reports and give them to Plaintiff, and delete all electronically kept credit reports. (Exhibit B).

49. Plaintiff did not receive a response to his October 15, 2015 letter.

50. On October 26, 2015, Plaintiff faxed another letter to the finance director at Midway, again asking him or her to gather credit reports and give them to Plaintiff, and delete all electronically kept credit reports. (Exhibit C).

51. Plaintiff did not receive a response to his October 26, 2015 letter.

52. On November 24, 2015, Plaintiff faxed his final letter to the finance director at Midway, again asking him or her to gather credit reports and give them to Plaintiff, and delete all electronically kept credit reports. (Exhibit D).

53. Plaintiff did not receive a response to his November 24, 2015 letter.

## CAUSE OF ACTION NO. 1: VIOLATION OF THE FCRA

54. Plaintiff hereby re-alleges and incorporates herein by this reference the allegations set forth in above Paragraphs.

55. Midway is a "person" as that term is defined in 15 U.S.C. §1681a (b).

56. The FCRA establishes very specific rules placing limitations upon an entity (or "person") seeking to obtain a consumer's credit history or the content of a consumer's credit file, as follows:

   (f)   Certain use or obtaining of information prohibited. - A person shall not use or obtain a consumer report for any purpose unless -

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

See 15 U.S.C. §1681b(f).

57. Section1681 b(a)(3) of the FCRA lists the all-inclusive purposes for which a consumer report can be obtained, as follows:

(a) In General. - * * * [A] consumer reporting agency may furnish a consumer report under the following circumstances and no other:

\*\*\*

(3) To a person which it has reason to believe -

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

\*\*\*

(F) otherwise has a legitimate business need for the information - (i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

58. Midway had no permissible purpose as set forth under the FCRA to obtain Plaintiff's credit history from Experian, Equifax or TransUnion.

59. Midway had actual knowledge that it had no permissible purpose to obtain Plaintiff's credit information from Experian, Equifax or TransUnion.

60. Midway willfully violated the FCRA to gain unfair advantage in its dealings with Plaintiff.

61. As a direct and proximate result of Midway's willful conduct as outlined above, Plaintiff is entitled to $100-$1000 in statutory damages, plus punitive damages and reasonable attorney's fees together with the costs of this action as provided by 15 U.S.C. §1681n.

62. Alternatively, Midway's impermissible access of Plaintiff's credit information constitutes a negligent violation as set forth in 15 U.S.C. §1681o.  In this regard, Plaintiff is entitled to recover his actual damages in an amount to be proven at trial, plus attorney's fees together with the costs of this action.

## JURY DEMAND

63. Plaintiff requests a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter Judgment in his favor and against Defendant for the following:

    a.    Actual damages,

    b.    Statutory damages,

    c.    Punitive damages,

    d.    Attorney's fees and costs;

    e.    Interest on the judgment rendered herein at the maximum lawful rate from the date of its rendition until paid in full; and,

f.   Such other and further relief as this Court deems just and proper.

DATED this 20th of January, 2016.

              CHOI & FABIAN, PLC

              By: */s/ Hyung S. Choi*
               Hyung S. Choi
                Attorneys for Plaintiff